## CHICAGO, R. I. & P. RY. CO. v. NORMAN.

No. 20741.  Sept. 26, 1933.

W. R. Bleakmore, John Barry, W. L. Farmer, and Robert E. Lee, for plaintiff in error.

Pryor & Stokes and Hugh M. Sandlin, for defendant in error.

BAYLESS, J.  William Norman, as plaintiff, recovered a judgment in the district court of Hughes county, Okla., against the Chicago, Rock Island & Pacific Railway Company, a corporation, the defendant, for the sum of $400, as damages for personal injuries alleged to have been sustained while working for it. The railway company appealed. The parties will be referred to herein as they appeared below.

The principal defense relied upon by the defendant was a denial of the relationship of master and servant between it and the plaintiff. Because of the view we take of the case, this will be the only question necessary to be discussed.

The facts with relation to the cause of action set up by the plaintiff, as shown by the pleadings and the evidence introduced at the trial, are substantially as follows: The defendant and another railway company, commonly referred to in the evidence as the Frisco, operated lines of track which intersected at Holdenville, Okla. By a written contract between the two railway companies, a joint depot and other facilities were maintained at Holdenville, and the companies took turn about operating this depot and other facilities for three-year periods. In addition to the jointly owned depot and other facilities, each railway company owned and maintained and operated its own lines, signals, facilities,

etc. The operating company employed all the help necessary to the operation of the depot, subject to the approval of the other company of the fitness of such employees, and paid them, billing the other company each month for its share of the expenses of the operation. The plaintiff was employed by the defendant while it was operating the depot, under the contract, to serve as a porter and general handy man about the depot. On the date of the injury, the plaintiff was instructed by the defendant's station agent to replenish the fuel in a lamp in the top of a semaphore signal tower of the Frisco for the purpose of enabling signals to be given to a Frisco train shortly due to pass said depot in interstate commerce. This particular duty was his, and he had performed it before. This semaphore signal tower was located by the depot building, but situated so as to serve the Frisco only. While the plaintiff was engaged in the performance of his duty, he was injured by falling part way down this semaphore signal tower.

There are many cases cited to us concerning the elements of proof of the existence of the relationship of master and servant. We find that the elements most generally looked for as indicative of such relationship are the right to hire, the right to fire, the right to supervise and control the work, and the duty to pay compensation. However, there are many cases brought about by the complex industrial relations of the times which present facts not capable of being judged satisfactorily by these four elements together, or any one of them or combination of them. The modern rule seems to recognize that these four elements are not exclusive or conclusive.

The defendant pleaded, and rightly so in our opinion, that this action was to be governed by the Federal Employers' Liability Act of Congress, that all state laws upon the subject are superseded, and the interpretations which the federal courts have put upon this act are binding upon this court. N. Y. Central R. Co. v. Winfield, 244 U. S. 147, 61 L. Ed. 1045, and Gulf, M. & N. R. Co. v. Wells, 275 U. S. 455, 72 L. Ed. 370.

The defendant in this case, at the time of his injury, was acting under the direction and supervision of an employee employed by the defendant, but paid jointly by both companies. The Supreme Court of the United States, in the case of Hull v. Philadelphia & R. R. Co., 252 U. S. 475, 64 L. Ed. 670, passed upon a situation where two railway companies were using the same line of track for their traffic, although the track belonged to the defendant railway company. While operating a train on the defendant company's track for another railway company, Hull was killed, and his administratrix sued the defendant company, under the Federal Employers' Liability Act, upon the theory that, inasmuch as the train was being operated on the defendant company's track, under its direction and control as to movements and operations, her decedent was an employee of the defendant company and not of the company whose train he was operating. The Supreme Court rejected this view when it said:

"It is clear that each company retained control of its own train crews; that what the latter did upon the line of the other road was done as a part of their duty to the general employer; and that, so far as they were subject while upon the tracks of the other company to its rules, regulations, discipline, and orders, this was for the purpose of coordinating their movements to the other operations of the owning company, securing the safety of all concerned, and furthering the general object of the agreement between the companies."

We can thus see that the element of immediate direction and control is not conclusive.

We have been cited the case of Atlantic Coast Line Ry. Co. v. Treadway's Adm'x, 120 Va. 735, 93 S. E. 560, 10 A. L. R 1411 (writ of certiorari denied, 245 U. S. 670, 62 L. Ed. 540), and because of the similarity between the facts in that case and this one and the evident soundness of the rule of law therein announced, we have determined to follow it. The facts in that case are that two railway companies' lines of track intersected and they maintained a joint depot and other facilities, as in this case, and each company had its separate signal facilities. The injured employee was employed by the Southern Railway Company during its period of time for operating under the contract between those two companies, but was injured by the defendant company while engaged in working upon the signal facilities of the defendant company. The defendant company denied liability upon the ground that the injured man was employed by the operating company. The Supreme Court of Virginia rejected this contention, and after discussing the various elements which will be looked for as evidence of whether or not the relationship of master and servant exists said:

"So, in the instant case, the duties of the plaintiff's intestate (among others) were to operate signals connected with the passage of the trains of defendant, and to keep a certain light which served exclusively the operation of certain of defendant's trains. They were in their very nature duties necessarily to be performed by someone for the defendant, to enable the latter to discharge its public service duties as a common carrier,—its public employment under its franchise. Central Transp. Co. v. Pullman's Palace Car Co., 139 U. S. 24, 35 L. Ed. 55, 11 Sup. Ct. Rep. 478, and authorities next above cited. They were, therefore, duties of the defendant, and not of the Southern Railway Company, or of any other person or corporation. Their discharge was the discharge of duties of a servant to the defendant. That service by the plaintiff's intestate was knowingly accepted by the defendant. Hence, upon the established principles of common law, the plaintiff's intestate was a servant—and employee—of the defendant."

That the rule of law announced in this case is in keeping with the interpretation intended by Congress to be placed upon the Federal Employers' Liability Act is shown by the fact that the Supreme Court of the United States refused to grant certiorari in this case.

Each employee engaged in work about the depot at Holdenville, Okla., under the contract existing between the two railway companies, was the joint employee of both companies, and when he was engaged in the performance of duties incident to the operations of one company as distinguished from those of another company, he was for that purpose and for the time being the employee of the company whose work he was doing. In this instance the injured employee was working upon property owned and operated by the Frisco Company, devoted by it to the operations of its trains alone, and the defendant company had nothing whatever to do with the ownership, maintenance, or operation of said semaphore signal tower; and it is clear in our mind, in view of the authorities reviewed hereinbefore, and especially the Virginia case, that the injured employee was the servant of the Frisco Company and not the defendant at the time of his injury.

For that reason, the judgment of the trial court is reversed.

RILEY, C. J., and SWINDALL, McNEILL, OSBORN, and BUSBY, JJ., concur. CULLISON, V. C. J., and ANDREWS and WELCH, JJ., absent.